JOSÉ SANTANA, demandante y apelado, *v.* SANTIAGO BLASCO, demandado y apelante.

Número 11155.

*Sometido:* 8 de julio de 1954. *Resuelto:* 12 de septiembre de 1955.

José R. Fournier, Virgilio Brunet, Luis Miranda Correa y José R. Vélez Torres, abogados del apelante; Víctor M. Bosch, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata de una querella por salarios devengados y no pagados, donde quedaron establecidos por estipulación de las partes, los siguientes hechos: el querellante trabajaba durante 2 días a la semana como chófer y durante 4 días a la semana como peón, en una granja del querellado dedicada a la cría de pollos y cerdos; el querellado vendía los pollos y cerdos de su granja a varios establecimientos comerciales y detallistas, quienes a su vez se dedicaban a la reventa de los mismos, y el querellante era el que transportaba y distribuía dichos pollos y cerdos. El querellante alegó y así lo resolvió la ilustrada Sala sentenciadora, que su tarea estaba cubierta por las disposiciones del Decreto Mandatorio núm. 16 de la Junta de Salario Mínimo del anterior Departamento del Trabajo de Puerto Rico "fijando salario mínimo, períodos máximos de labor y demás condiciones de trabajo para los empleados del comercio al por mayor." El querellado alegó que dicho decreto mandatorio no le era aplicable a su negocio, y por el contrario le eran aplicables la Ley núm. 379 de 15 de mayo de 1948 ((1) pág. 1255), regulando la jornada de trabajo, y la Ley núm. 289 de 9 de abril de 1946 ((1) pág. 683) regulando el día de descanso.

■■ Para nosotros es claro que el querellado no puede ser considerado como un comerciante, en el significado usual y corriente que tiene dicha palabra. Las tres ramas clásicas de la economía son agricultura, industria y comercio; la primera, dedicada a la obtención de frutos naturales; la segunda, dedicada a la manufactura de productos elaborados; la tercera, dedicada a la distribución de los objetos de comercio, tanto en su forma natural como en su forma elaborada. Cada una de ellas tiene su propio círculo económico y debe tener estimativas diversas fundada en la distinta naturaleza de su tarea tradicional. Lo primero que debe establecerse es la clasificación genérica de la tarea que produce el bien dentro de las formas tradicionales de la economía. Lo se-

gundo es el carácter del bien u objeto económico que produce la tarea; lo tercero es su individualización dentro de los sistemas de lucro reconocidos por la especulación mercantil. Hemos descartado a propósito todo lo relacionado con "servicios" para poder utilizar el criterio clásico en su mayor simplicidad expositiva.

Es indudable que un avicultor está dedicado habitualmente a la tarea de obtener frutos naturales. Por tanto, genéricamente hablando, un avicultor es un agricultor. El bien económico que extrae de la naturaleza conserva su forma natural, no es elaborado y no es susceptible de ser considerado por sí mismo un objeto de comercio. Por eso el art. 244 de nuestro Código de Comercio no reputa mercantiles las ventas que hicieren los labradores o ganaderos de los frutos o cabezas de sus cosechas o ganados. El sistema de lucro al cual está adscrito goza de la inmovilidad en los factores y de las fluctuaciones cíclicas que son características del fruto natural.

El criterio que parece prevalecer en el ordenamiento científico del salario es el mismo. La sec. 203, apartado *f* de la Ley de Normas Razonables del Trabajo de 1938 define la agricultura de la siguiente manera: "el término 'agricultura' incluye la agricultura en todos sus ramos y entre otras cosas incluye el cultivo y labranza de la tierra, la industria de lecherías, producción, siembra, cultivo y cosecha de cualquier producto agrícola u hortícola (incluyendo los productos definidos como productos agrícolas en el art. 15 (*g*) de la Ley de Ventas Agrícolas, según ha sido enmendada), la crianza de ganados, de abejas, de *animales* productores de pieles o *aves de corral* y cualesquier trabajos (incluyendo cualesquier trabajos de selvicultura o explotación de bosques maderables) que se lleven a cabo por un agricultor o en una finca como incidentales a dichos trabajos agrícolas o conjuntamente con los mismos, incluyendo la preparación de dichos productos para el mercado, *o su entrega al almacén o al mercado, o a porteadores para ser transportados al mercado:*" 29 U.S.C.A. 15, sec. 203, inciso *f.* Vide además: R. L. Cohen–Economía de la

Agricultura–pág. 29, (ed. del Fondo de Cultura Económica del 1942). Por analogía véase el caso de *Maneja* v. *Waialua Agricultural Co. Ltd.*, 349 U. S. 254, (*Clark*), (1955).

Hemos escrutinizado la Determinación de Hechos, Opinión y Decreto Mandatorio núm. 16 aplicable al comercio al por mayor en Puerto Rico, preparado por la Junta de Salario Mínimo, y no creemos que fuera la intención de la Junta hacer una agrupación de tareas distintas a las que ha ordenado tradicionalmente la economía secular. El término "comercio al por mayor" se usa en su significado usual y ordinario: "Venta de mercadería a detallistas, a establecimientos comerciales o a otros mayoristas".

 En cuanto al aspecto más importante de este caso, que es la transportación desde la granja hasta los establecimientos comerciales de las aves o animales del querellado, se aclaró en la Determinación de Hechos, Opinión y Decreto antes aludido, que dicha transportación no se consideraría como una tarea incidental o necesaria al comercio al por mayor. Sobre este aspecto de la cuestión, la Junta se expresó así: "Tanto en los pliegos de objeciones como en los testimonios ofrecidos en el curso de la audiencia se hizo la alegación de que la definición, tal como estaba redactada en el proyecto de decreto, era demasiado inclusiva y podría afectar *hasta los procesos fabriles o agrícolas de empresas que disponen de sus productos en grandes cantidades*. No fué tal la intención de la Junta y, para evitar tal posible interpretación se adicionó la definición de sucursal de venta de empresa fabril. La definición del decreto mandatorio que más adelante se inserta *abarcará todos los procesos* que lleve a cabo un establecimiento de comercio al por mayor *pero ninguno de los que lleve a cabo una persona o entidad agrícola o fabril hasta el punto en que entregue su producto al comerciante* o entidad que habrá de vender el mismo." Como se ve la transportación desde la granja al establecimiento no se considera como formando parte del comercio al por mayor sino como formando parte de la tarea agrícola. También se aclaró que cualquiera dualidad

de la tarea industrial y de la tarea comercial, requeriría la instalación de otro establecimiento subsidiario (sucursal) destinado para vender o distribuir al por mayor los productos de dicha empresa fabril por el mismo productor. No hay razón por la cual no debemos aplicar el mismo principio a un agricultor o a una empresa agrícola.

*Debe revocarse la sentencia apelada y devolverse el caso al Tribunal Superior de Puerto Rico, Sala de San Juan, para que lo resuelva aplicando la Ley núm. 379 de 15 de mayo de 1948 y la Ley núm. 289 de 9 de abril de 1946.*